THE BOSTON & MAINE RAILROAD *vs.* ARCHIBALD BABCOCK.

The defendant having entered into an agreement to sell the plaintiffs, a railroad corporation, " the land they take on the northerly side of the M. turnpike, adjoin ing T.'s land, at twenty cents per square foot, for each and every foot so taken by said company," and the plaintiffs having brought a bill in equity for a specific performance; it was held, that the agreement was not for a sale of the land generally, or of such part of it as the plaintiffs might elect, or of such as they should accept the offer of; but for the sale of such a part of the land described, as the plaintiffs might take, in the exercise of the authority conferred on them by law to take land for their road.

If the terms of a contract are doubtful, a court of equity will not decree a specific performance.

THIS was a bill in equity for the specific performance of a contract, in which the plaintiffs alleged, that the defendant,

on the 18th of July, 1844, was seized and was the owner of a certain piece of land in Somerville, particularly described in the bill, and, in consideration that the plaintiffs would purchase the same for their use as a corporation, signed a written paper, (which was made a part of the bill,) by which he agreed to convey to the plaintiffs the land above mentioned, for the sum of four thousand dollars, and also to sell to the plaintiffs the land they might take belonging to him on the northerly side of the Medford turnpike, adjoining Tenney's land, at twenty cents a square foot, for each and every foot taken; that, on the 1st of August, 1844, the agreement being then in full force, and unrescinded by the defendant, the plaintiffs elected to take of the defendant, under and on the terms mentioned in the same, a parcel of land belonging to the defendant, lying on the northerly side of the Medford turnpike, and adjoining Tenney's, and bounded and described as particularly set forth in the bill; that, on the same day, the plaintiffs notified the defendant of their election, and offered to pay him for a conveyance of the land, and did produce to him for that purpose and requested him to execute a conveyance of the same, and tendered him such a conveyance; that the defendant neglected to execute such conveyance, or to perform his contract, and had ever since neglected to perform the same; that the plaintiffs, in the confidence that the agreement with the defendant would be complied with by him in good faith, took for their corporate use the lot of land described in the bill, which they had elected to take, and located the track of their road on a part thereof, and that the remainder thereof was valuable to them; and that the defendant, afterwards, unmindful of his obligations under his contract with the plaintiffs, instituted proceedings before the county commissioners of Middlesex, for the recovery of his damages for the land so taken by the plaintiffs.

The prayer of the bill was, that the defendant might be enjoined from further prosecuting his claim for damages before the commissioners, and might be ordered to convey the

land to the plaintiffs on the terms contained in the agreement between the parties.

The writing signed by the defendant, which was referred to in the bill, was as follows: —

"I hereby agree to sell and convey, by good and sufficient deed, the heater parcel of land bounded by colonel Goodrich and others on the westerly side, northerly by the Medford turnpike, and southerly by the Winter Hill road, being the point of land between the turnpike and town road, containing one half acre and twenty-one poles, as per plan of Petei Tufts, Jr., with all the privileges and rights appertaining to said land, to the Boston & Maine Railroad Company, on the payment of four thousand dollars; and also agree to sell the said company the land they take on the northerly side of the Medford turnpike, adjoining Tenney's land, at twenty cents per square foot, for each and every foot so taken by said company."

The defendants demurred to the bill, assigning for cause : 1. That the writing referred to therein does not purport to contain any consideration, and none is alleged in the bill; 2. That it is not alleged in the bill, that the defendant, at the time of making the agreement, was the owner of the land which was the subject of it; 3. That it is not alleged in the bill, that the land, of which a conveyance is sought, is the same, or a part of the same, mentioned in the agreement ; 4. That the bill does not allege that the plaintiffs tendered the price of the land to the defendants.

*J. Hall*, for the defendant, referred to *Allen* v. *Roberts*, 2 Bibb, 98; *German* v. *Machin*, 6 Paige, 280; *Boucher* v. *Van Buskirk*, 2 A. K. Marsh. 346; *Dwight* v. *Pomeroy*, 17 Mass. 327 ; 1 Story, E. P. § 26; *Wright* v. *Dame*, 22 Pick. 55; *Kendall* v. *Almy*, 2 Sumner, 278; *Carr* v. *Duval*, 14 Pet. 77.

*G. Minot*, for the plaintiffs, referred to *Boys* v. *Ayerst,* Mad. & Geld. 316.

*J. Dana* replied.

FLETCHER, J.* This is also a bill for the specific perform-
ance of a contract, which is annexed to and made a part of
the bill. The court understand this contract to mean, that
the defendant agreed to receive payment at the rate of twenty
cents a square foot, for such portion of the land referred to,
as the plaintiffs should take, in the exercise of the power
given them in their charter, to take land for the purposes of
their road. It seems impossible to put any other construc-
tion upon the terms of the contract. In the first part of the
contract, the defendant agrees to sell the plaintiffs a certain
piece of land, by metes and bounds, for a stipulated price.
He then agrees to sell them " the land they take on the
northerly side of the turnpike " at twenty cents a foot " for
each and every foot so taken by said company." The agree-
ment is not to sell the land generally, at so much a foot ; nor
to sell such land as the plaintiffs may elect to take ; nor such
land as they shall accept the offer of ; but such land as they
actually take, that is, such land as they had full power to
take ; and, for land so taken, they are to pay and the defend-
ant to receive twenty cents a foot. By the terms of the con-
tract, it is distinctly announced, that the act of taking is
expected to be the separate, independent act of the plaintiffs.
These terms clearly import the exercise of a power on their
part ; such a power as it was well known belonged to them,
and which might be exercised to give effect to the agreement.

It was perfectly natural, that the corporation should wish
to fix the amount, which they would be obliged to pay for
land before taking it. The location of the road might be
determined by the price to be paid for the land. The con-
tract thus understood, therefore, was a perfectly natural and
reasonable one, on the part of the plaintiffs, and such, it is
believed, as is frequently made by railroad corporations. Be-
fore actually taking the land, as they had a right to do, they
agreed upon the damages they would have to pay for it ; and
the quantity was, of course, by the terms of the contract,

* WILDE, J., did not sit in this case.

limited to the amount they might rightfully and properly take, under and by virtue of their charter.

Now the bill, as framed, does not entitle the plaintiffs to enforce the performance of this contract. It does not appear, by the bill, that the corporation took any of the land referred to in the contract, under and by virtue of their charter, in the mode and with the formalities required by law. As it was in reference only to land which should be so taken, that the defendant stipulated, and it does not appear that any has been so taken, the plaintiffs can have no decree against the defendant.

But if the import and meaning of the contract were merely doubtful, it would not be in accordance with the principles of equity, to compel a specific performance. If contracts are not so certain in themselves, as to enable the court to arrive at the clear result of what is meant by all the terms contained in them, they will not be specifically enforced. It would be inequitable to carry a contract into effect, where the court are left in doubt as to the intention of the parties; for, in such case, the court might decree what the parties never intended or contemplated.

